475 So.2d 289 (1985)
R. Bruce WILLIAMS and Jenny W. Williams, His Wife, Petitioners,
v.
Susan W. WOOD, C. Champ Williams, Betty T. Williams, Stephen S. Williams, McCoy Restaurants, Inc. and Williams Management Enterprises, Inc., Respondents.
No. 85-761.
District Court of Appeal of Florida, Fifth District.
September 12, 1985.
Ronald L. Harrop, of Gurney & Handley, P.A., Orlando, for petitioners.
Marcia K. Lippincott, of Marcia K. Lippincott, P.A., Orlando, for respondents.

ON PETITION FOR WRIT OF CERTIORARI
UPCHURCH, Judge.
R. Bruce and Jenny Williams petition this *290 court for a writ of certiorari[1] to review an order disqualifying their counsel Leon Handley and the law firm of Gurney and Handley, P.A., from further representation in their suit against the respondents, the defendants below. The respondents are other members of the Williams family and businesses run by the Williams family.
The facts are as follows. In September, 1983, the Williamses filed their initial complaint against the defendants for illegal wiretapping, intentional infliction of emotional distress and defamation. The Williamses later filed a third amended complaint for illegal interception of oral communication, invasion of privacy, defamation, intentional infliction of emotional distress and civil conspiracy.
This third amended complaint alleged that beginning in December, 1981, the defendants illegally wiretapped and intercepted the private telephone communications of Williams on his office telephone at McCoy Restaurants. The complaint further alleged that the defendants invaded the privacy of Williams by hiring a private investigator to keep him under observation and surveillance without a legitimate reason. The claim for defamation alleged that defendants maliciously stated that Bruce Williams had stolen $125,000.00 from Williams Management Enterprises, Inc., that the Williamses were carriers of venereal disease, and that Williams was a homosexual and was insane and dangerous. The claim for intentional infliction of emotional distress was based, in part, on the allegation that defendants interrupted the funeral of the two-year old son of the Williamses by advising police officers that Williams was mentally deranged and would likely kill other members of the Williams family at the funeral. Finally, the claim for civil conspiracy alleged, in part, that the defendants conspired to destroy the reputation and credibility of Williams because the defendants knew that the Williamses were aware of unlawful criminal activities engaged in by the defendants. The defendants allegedly sought to destroy Williams' credibility so that any report or testimony by him concerning the defendants' illegal activities would be disbelieved. These alleged criminal activities include the "skimming" of daily receipts from the McCoy Restaurant, failure to report corporate income, the bribery of public officials and illegal campaign contributions.
In response to the third amended complaint, the defendants filed an answer and counterclaim. The counterclaim alleged causes of action for civil extortion, intentional infliction of emotional distress and abuse of process arising out of settlement negotiations concerning the Williamses' case.
The basis for the extortion claim was an allegation that attorney Leon Handley of the firm of Gurney & Handley, P.A., acting as an agent for Williams, stated to defendants' counsel that unless a satisfactory arrangement could be reached as to a buy-out of Williams' stock in a family owned corporation, that Williams was prepared to expose to the appropriate authorities the alleged illegal activities of the Williams family. The defendants also filed a motion to disqualify Leon Handley and the firm of Gurney and Handley, P.A. from representing the Williamses. The motion alleged, among other things, that attorney Handley was an "integral witness" in the defendants' counterclaim against the Williamses and that Handley and his law firm should be disqualified under Disciplinary Rules 5-101 and 5-102.
After a hearing was held, the trial court granted the defendants' motion to disqualify and ordered that Handley and his law firm immediately withdraw from representing of the Williamses in this litigation. The Williamses moved for rehearing and in support, filed an affidavit stating that they had no intention of calling Handley as a witness on their behalf on their claims against the defendants or in defense of the counterclaims. The motion for rehearing *291 was denied and the Williamses filed this petition for a writ of ceritorari.
To determine its correctness, the order of disqualification must be tested against the standards imposed by the Code of Professional Responsibility and in particular, Disciplinary Rule DR 5-101 and Disciplinary Rule 5-102. See Cazares v. Church of Scientology of Cal., 429 So.2d 348 (Fla. 5th DCA 1983). DR 5-102(B) provides that if, after undertaking litigation, a lawyer learns or it is obvious that he may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client in such a situation. The concern of the rule is that trial counsel might be inhibited from attacking his own credibility or arguing to the fact-finder the lack of credibility of his testimony thus affecting his ability to properly represent his client. Cazares, 429 So.2d at 350.
In Cazares, we noted that in line with the policy underlying DR 5-102(B), the anticipated testimony is "prejudicial" only when sufficiently adverse to the factual assertions or account of the events offered on behalf of the client. And, in order to require disqualification, the prejudice which would or might result from the testimony must be more than de minimis. That is, it must be substantial enough that an independent attorney might seek to cross-examine the witness and question his credibility. This narrow construction derives from the overall policy of the rule and the committee comment which notes that the rule was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel. 429 So.2d at 350.
Similarly, we noted that a narrow construction has been applied to the language "is or may be (prejudicial)" in the disciplinary rule. The mere assertion that the attorney's testimony may prejudice his client has been held to be insufficient. Rather, the moving party bears the burden of demonstrating the likelihood that prejudice will or might result.
Here the defendants have asserted that Handley is an "integral witness" in proving their counterclaim against the Williamses. However, there is nothing in the record to indicate that Handley's expected testimony would be adverse to the factual assertions of his clients, the Williamses. At most, Handley has conceded that his negotiating strategy may have involved an "unfortunate and ill-advised choice of words" but he has consistently denied making any threats or engaging in extortion. In these circumstances, the defendants have failed to demonstrate the likelihood that prejudice will or might result from Handley's testimony. Thus, DR 5-102(B) does not require his disqualification.
The order of disqualification, however, also referred to DR 5-101(B) as the basis for disqualification. DR 5-101(B) provides that a lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he "ought to be called as a witness" unless the testimony involves routine or uncontested matters.
Unlike DR 5-102, DR 5-101 does not distinguish the attorney-as-witness "on behalf of his client" and the attorney-as-witness "other than on behalf of his client." Ethical Consideration 5-10 observes that problems incident to the lawyer-witness relationship arise at different stages; they relate either to whether a lawyer should accept employment (DR 5-101) or should withdraw from employment (DR 5-102). EC 5-10 further notes that regardless of when the problem arises, the attorney's decision is to be governed by the same basic considerations.
As the same basic considerations underlying DR 5-102 also apply to DR 5-101, Handley was not properly disqualified under DR 5-101 on the basis that he ought to be called as a witness "other than on behalf of his client" as the requisite showing of prejudice was not made. The question then is whether Handley was properly disqualified on the basis that he knew or it *292 was obvious that he ought to be called as a witness "on behalf of his client."
In Cazares, we observed that courts have interpreted the phrase "ought to be called on behalf of his client" as requiring the withdrawal of counsel only if he is an indispensable witness, that is, he must have crucial information in his possession which must be divulged. Under this test, an attorney-witness is not indispensable if other witnesses are available to testify to the same information.
Applying this standard, the court in Davis v. Stamler, 494 F. Supp. 339 (D.N.J. 1980), aff'd, 650 F.2d 477 (3rd Cir.1981), found that disqualification was not warranted where the information which the attorney possessed was not "crucial", the attorney expressly stated that he had no intention of appearing as a witness for his client, and his client concurred with this determination. Similarly, disqualification was not warranted in Ross v. Great Atlantic & Pacific Tea Co., Inc., 447 F. Supp. 406 (S.D.N.Y. 1978) where the court observed that while the attorney was familiar with the circumstances surrounding the plaintiffs' claim, the plaintiffs' case could be readily presented through documents and the testimony of other witnesses who have firsthand knowledge of the facts. Finally, in Cazares, this court determined that disqualification under DR 5-101(B) was not warranted where the attorney for the Cazareses did not appear to have any crucial information, any information that he had could be presented through the testimony of others and his clients preferred that he remain as counsel rather than testify as a witness.
Here Handley does not appear to have crucial information in his possession which must be divulged to further his clients' interests. In fact, any information from Handley would appear cumulative to the Williamses' testimony. In addition, the Williamses have indicated that they have no intention of calling Handley as a witness and prefer that he remain as their counsel. In these circumstances, Handley's disqualification under DR 5-101(B) on the basis that he "ought to be called as a witness" is not warranted.
Writ of certiorari GRANTED and the order of disqualification is QUASHED.
COBB, C.J., and COWART, J., concur.
NOTES
[1] See Cazares v. Church of Scientology of Cal., 429 So.2d 348 (Fla. 5th DCA 1983); State ex. rel. Oldham v. Aulls, 408 So.2d 587 (Fla. 5th DCA 1981).