934 So.2d 675 (2006)
ALLIEDSIGNAL RECOVERY TRUST, Petitioner,
v.
ALLIEDSIGNAL, INC., Respondent.
No. 2D05-4251.
District Court of Appeal of Florida, Second District.
August 9, 2006.
*676 Donald B. Ayer, Gregory M. Shumaker, Edward K.M. Bilich, Michael S. Fried of Jones Day, Washington, D.C.; and John W. Frost, II, of Frost, Tamayo, Sessums & Aranda, P.A., Bartow, for Petitioner.
Benjamin H. Hill, III, and Dennis P. Waggoner of Hill, Ward & Henderson, P.A., Tampa; Steven D. McCormick, PC of Kirkland & Ellis, LLP, Chicago, Illinois; Major B. Harding and John Beranek of Ausley & McMullen, P.A., Tallahassee; Eugene F. Assaf and Craig S. Primis of Kirkland & Ellis, LLP, Washington, D.C., for Respondent.
LaROSE, Judge.
AlliedSignal Recovery Trust (Trust), a group of creditors of Breed Technologies, Inc. (Breed), petitioned this court for certiorari review of an interlocutory order disqualifying its trial counsel, Geoffrey Stewart, in Breed's fraud lawsuit against AlliedSignal, Inc. (AlliedSignal). In an *677 earlier order, we granted the petition and quashed the trial court's order. We take this opportunity to explain our reasoning.
At the outset, we note that "certiorari is the proper remedy to seek review of an order granting or denying a motion to disqualify counsel or a law firm." Gonzalez v. Chillura, 892 So.2d 1075, 1076 (Fla. 2d DCA 2004). After all, an order disqualifying counsel denies the right to choose one's counsel and works a material injury that cannot be remedied on appeal. Id. at 1076-77; City of Lauderdale Lakes v. Enter. Leasing Co., 654 So.2d 645, 646 (Fla. 4th DCA 1995).
The underlying facts are straightforward. Breed manufactured automobile air bag systems. Safety Restraint Systems (SRS), an AlliedSignal division, also manufactured automobile safety products. Breed retained Mr. Stewart, long-time counsel for Breed and its founders, to negotiate the purchase of SRS from Allied-Signal. In late 1997, Breed acquired SRS for $710,000,000.
In mid-1998, Breed allegedly learned that SRS's financial condition was significantly worse than previously represented by AlliedSignal. Breed's financial condition deteriorated and bankruptcy loomed. In 1999, Mr. Stewart advised Breed's founders to restructure their personal financial affairs to avoid potential mismanagement claims by Breed's creditors. Mr. Stewart also conducted an investigation that allegedly revealed that AlliedSignal had concealed critical financial information about SRS and seriously misrepresented SRS's past and projected earnings. In the summer of 1999, Breed, represented by Mr. Stewart, sued AlliedSignal. In defense, AlliedSignal contended that Mr. Stewart concocted his discovery of alleged fraud to insulate Breed's founders from mismanagement claims.
Several weeks after filing suit, Breed filed for bankruptcy protection. As part of Breed's restructuring, the bankruptcy court authorized formation of the Trust to pursue the fraud claims against AlliedSignal on behalf of Breed's creditors. In effect, Breed's claims were transferred to the Trust. "After payment of fees and expenses, any recovery from Allied Signal by the Trust [would] be distributed to Breed's creditors." Allied Signal Recovery Trust v. Allied Signal, Inc., 298 F.3d 263, 266 n. 2 (3d Cir.2002). The Trust retained Mr. Stewart as its counsel.
AlliedSignal moved to disqualify Mr. Stewart. The motion stressed that Mr. Stewart had an extensive and lengthy relationship with Breed and its founders, the fraud claims were based on Mr. Stewart's investigation, and the asset protection advice he gave to Breed's founders created a conflict between him and the Trust. According to AlliedSignal, Mr. Stewart would be a key trial witness or, at a minimum, an impermissible "unsworn witness."[1]
The Trust opposed the motion. It argued that disqualification was limited to two situations: (1) where the lawyer is a necessary witness for his own client; or (2) where the attorney, when called as a witness for the other side, will provide testimony prejudicial to his client and the client either does not consent to waive the conflict or does consent and the court finds the consent unreasonable.
Although the Trust saw no conflict, it waived any potential conflict of interest that Mr. Stewart might have in representing *678 the Trust. Further, the Trust disavowed any need or intention to call Mr. Stewart to testify at trial. The Trust certainly did not act injudiciously; the trustee consulted with Trust beneficiaries, sophisticated business entities, and financial institutions represented by competent lawyers. They supported Mr. Stewart's continued role as counsel, recognizing his expertise, detailed knowledge of the legal and factual issues in the case, and familiarity with Breed and its personnel. Nevertheless, the trial court disqualified Mr. Stewart. It concluded that Mr. Stewart was a necessary witness for AlliedSignal, was likely to be an "unsworn witness" at trial, and that any conflict waiver by the Trust was unreasonable.
Disqualification is an extraordinary remedy to be used sparingly. Therriault v. Berghmans, 788 So.2d 1119, 1120 (Fla. 2d DCA 2001); Arcara v. Philip M. Warren, P.A., 574 So.2d 325, 326 (Fla. 4th DCA 1991). Disqualification is an "immensely unusual remedy." Whitener v. First Union Nat'l Bank of Fla., 901 So.2d 366, 370 (Fla. 5th DCA 2005). An order disqualifying counsel "`must be tested against the standards imposed by [the] Rules of Professional Conduct.'" Tobkin v. Tobkin, 843 So.2d 961, 962 (Fla. 4th DCA 2003) (quoting City of Lauderdale Lakes, 654 So.2d at 646); accord Ray v. Stuckey, 491 So.2d 1211, 1213 (Fla. 1st DCA 1986); Cazares v. Church of Scientology of Cal., Inc., 429 So.2d 348, 349 (Fla. 5th DCA 1983). Measured against these standards, Mr. Stewart's disqualification was inappropriate.
The Rules Regulating the Florida Bar provide:
Rule 4-3.7. Lawyer as witness
(a) When Lawyer May Testify. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
(3) the testimony relates to the nature and value of legal services rendered in the case; or
(4) disqualification of the lawyer would work substantial hardship on the client.
Rule 4-3.7 prohibits a lawyer from serving as trial counsel for a client where he is likely to be a necessary witness for that client. "Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client." Rule 4-3.7 cmt. This dual role could create a conflict if the lawyer's testimony is at odds with that of his client. Moreover, the dual role could prejudice the opposing party by bolstering the lawyer's testimony for his client because it comes from an advocate. See Scott v. State, 717 So.2d 908, 910 (Fla.1998).
Rule 4-3.7 is inapplicable here, however; the rule contemplates the lawyer testifying on his client's behalf. The Trust conceded that Mr. Stewart was not a necessary witness and announced that it would not call him to testify. Nonetheless, the trial court disqualified Mr. Stewart because of potential prejudice to AlliedSignal if it called him to testify: "[T]he court's focus is on prejudice to the opposing party who calls him as a witness, not on the prejudice to his own client contemplated by the analysis under Rule 4-3.7." Neither the rule nor its comment supports disqualification on this basis.
*679 As for AlliedSignal's concern that Mr. Stewart's prior representation of Breed's founders creates a conflict with the Trust, we do not quarrel with the general rule that a lawyer may not represent a client if such representation will be directly or materially adverse to the interests of a current or former client. See Rules Regulating the Florida Bar 4-1.7, 4-1.9:
Rule 4-1.7. Conflict of interest; general rule
(a) Representing Adverse Interests. A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and
(2) each client consents after consultation.
....
Rule 4-1.9. Conflict of interest; former client
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation. . . .
The Trust retained Mr. Stewart solely to pursue claims against AlliedSignal and waived any conflict of interest. See rule 4-1.7 cmt. consultation and consent ("A client may consent to representation notwithstanding a conflict."). Any recovery would inure to the benefit of the Trust and, ultimately, to Breed's creditors. Any potential claim against Breed's founders was not a Trust asset; such a claim, if any, might belong to the reorganized Breed, an entity not represented by Mr. Stewart.[2] Under the circumstances, therefore, it is not evident that any conflict existed. Assuming that Mr. Stewart provided asset protection planning for Breed's founders, AlliedSignal failed to articulate how that advice created a conflict. It seems obvious that Breed's founders and the Trust shared an interest in securing a meaningful recovery from AlliedSignal.
We discern that AlliedSignal's central conflict concern is that Mr. Stewart will be a key witness for AlliedSignal, especially as to his investigation of AlliedSignal's alleged fraud. On our record, we are not persuaded that this rationale warrants disqualification. We find Allstate Insurance Co. v. English, 588 So.2d 294 (Fla. 2d DCA 1991), instructive. In English, we quashed an order granting a motion to disqualify Allstate's lawyer because he would be called to testify for the other side. Id. at 295. We observed that there had been no showing that any testimony the lawyer might give would be "`sufficiently adverse to the factual assertions or account of events offered on behalf of the client.'" Id. (quoting Ray, 491 So.2d at 1213 (following old rule 5-102(B) that lawyer who might be witness for opposing party may continue representation until prejudice to his own client is apparent)); see also Cazares, 429 So.2d at 350 (same).
Like Allstate's counsel in English, Mr. Stewart was not going to testify for his own client. See Rule 4-3.7. But, because AlliedSignal could call Mr. Stewart *680 to testify against his client, the trial court concluded that any conflict waiver given by the Trust was unreasonable because "[a] disinterested lawyer would not take the chance" that a jury could react negatively to Mr. Stewart's extensive involvement with Breed. AlliedSignal, however, made no showing that Mr. Stewart would give any testimony "sufficiently adverse to the factual allegations or account of events offered on behalf of the [Trust]." To allow disqualification without such a showing invites mischief.
The requirement that a lawyer withdraw when he expects to be a witness was not intended to permit an opposing party to call him as a witness and disqualify him from serving as counsel. Id. at 295-96; Arcara, 574 So.2d at 326; Ray, 491 So.2d at 1214; Cazares, 429 So.2d at 350; see also Beavers v. Conner, 258 So.2d 330, 332-33 (Fla. 3d DCA 1972) (stating opposing counsel should not be permitted to force disassociation between counsel and client just by calling counsel as adverse witness); Hill v. Douglass, 248 So.2d 182, 183 (Fla. 1st DCA 1971), quashed on other grounds, 271 So.2d 1 (Fla.1972) (stating lawyer need not withdraw from case where he or she might be called to testify by adversary as this would create situation in which adversary could disassociate client's chosen counsel).
AlliedSignal's reliance on Live & Let Live, Inc. v. Carlsberg Mobile Home Properties, Ltd.-'73, 388 So.2d 629 (Fla. 1st DCA 1980), is misplaced. That case addresses the former code of professional responsibility. See Fla. Bar Code of Prof. Resp. D.R. 5-102(B).[3] In updating its professional conduct rules in 1987, Florida declined to adopt a proposed rule mandating automatic disqualification resulting from testimony for an opposing party.[4]
AlliedSignal's reference to Fleitman v. McPherson, 691 So.2d 37 (Fla. 1st DCA 1997), is also inapposite. Fleitman, decided after the adoption of the new rules, held that "when it is shown that the attorney will be an indispensable witness or when the attorney becomes a `central figure' in the case, disqualification is appropriate." Id. at 38 (citing City of Lauderdale Lakes, 654 So.2d at 646). However, the lawyers in Fleitman and City of Lauderdale Lakes were likely to be "featured witnesses" at trial for their own clients. Neither case, therefore, supports disqualification of Mr. Stewart because he might be a witness for AlliedSignal.
The trial court also found that Mr. Stewart should be disqualified as an "unsworn witness." This theory has no express support in the Rules Regulating the Florida Bar or Florida case law. The trial court nevertheless relied on Marrero v. State, 478 So.2d 1155 (Fla. 3d DCA 1985), as a basis for disqualification. Marrero, however, involved a prosecutor whose improper *681 questioning of a witness demonstrated his involvement in the underlying events and was an impermissible attempt at impeachment. Id. at 1157. That is not the case here. Further, the actual or perceived evils of the "unsworn witness" can be addressed by diligent supervision of trial proceedings by the trial judge. See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So.2d 606, 608-09 (Fla.1994) ("Clearly, a trial judge has the inherent power to do those things necessary to enforce its orders, to conduct its business in a proper manner, and to protect the court from acts obstructing the administration of justice."); accord Moakley v. Smallwood, 826 So.2d 221, 224 (Fla.2002).
By disqualifying Mr. Stewart, the trial court departed from the essential requirements of law, causing irreparable harm to the Trust. We grant the petition for writ of certiorari and quash the order below.
Petition previously granted and the trial court order quashed.
CASANUEVA and CANADY, JJ., Concur.
NOTES
[1] The "unsworn witness" theory centers on the possibility that a lawyer with personal knowledge of the underlying facts could, through his demeanor or questioning of witnesses, improperly suggest the lawyer's personal views on a matter, thus providing the equivalent of unsworn testimony in the case.
[2] We question AlliedSignal's standing to assert this actual or perceived conflict. Allied-Signal was not Mr. Stewart's current or former client as contemplated by rule 4-1.7 or rule 4-1.9. If anyone had an objection to Mr. Stewart's representation, it would have been Breed's creditors.
[3] after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client. (Emphasis supplied.)
The concern of rule D.R. 5-102(B) was that trial counsel "might be inhibited from attacking his own credibility or arguing to the fact-finder the lack of credibility of his testimony, thus affecting his ability to properly represent his client." Ray, 491 So.2d at 1213. Whether a lawyer who is likely to be called to testify for an adverse party should decline further representation of his client can be addressed under the framework of rule 4-1.7 and rule 4-1.9. See rule 4-3.7, cmt.
[4] The Code of Professional Responsibility was replaced by the Rules of Professional Conduct, effective January 1, 1987. The Fla. Bar Re Rules Regulating the Fla. Bar, 494 So.2d 977 (Fla.), opinion corrected by 507 So.2d 1366 (Fla.1986).